IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| DEMETRIUS CUBBAGE, | : | |
|---|---|---|
| | : | |
| Movant/Defendant, | : | |
| | : | |
| v. | : | Cr. A. No. 02-44-JJF |
| | : | Civ. A. No. 07-794-JJF |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondent/Plaintiff. | : | |

**MEMORANDUM OPINION**

———————————————

Demetrius Cubbage. <u>Pro se</u> Movant.

Christopher J. Burke, Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware. Attorney for Respondent.

———————————————

July $\cancel{\emptyset}$ , 2010
Wilmington, Delaware

Farnan, District Judge

Demetrius Cubbage ("Movant") filed a Motion To Vacate, Set Aside, Or Correct Sentence Pursuant To 28 U.S.C. § 2255. (D.I. 114.) Respondent filed an Answer in opposition, and Movant filed a Reply. (D.I. 124; D.I. 128.) For the reasons discussed, the Court will deny Movant's Section 2255 Motion without holding an evidentiary hearing.

## I.   PROCEDURAL AND FACTUAL BACKGROUND

On February 6, 2002, officers with the Delaware Police's Special Operations Response Team ("SORT Team") were preparing to execute a search warrant at an apartment in Dover, Delaware. (D.I. 124.) Approximately four minutes prior to the SORT Team's entry into the apartment, an officer conducting surveillance saw Movant exit the apartment building briefly. Movant walked to a Buick Park Avenue parked in front of the residence, opened the trunk, and began moving items from one side of the trunk to the other. Movant began to increase the pace of his movement, until he suddenly appeared to relax. At that time, Movant reached inside the trunk and removed a camouflage-colored cloth that appeared to be wrapped around something hard. Movant then looked around, tucked the item under his arm, and returned to the residence. Id.

When the SORT Team entered the apartment a few minutes later, they found one male sitting on a couch in the living room.

1

A loveseat was positioned next to and perpendicular to the couch, on top of which was a stack of items including: (1) a red gift bag with a sum of money totaling $34,148 and a blue notebook-sized planner containing a Delaware Department of Motor Vehicles Title to a 1994 Buick Park Avenue in Movant's name; and (2) a coat with a loaded semi-automatic pistol in one of the pockets. Behind one of the loveseat cushions, the police found a camouflage-colored canvas-type cloth - the kind used to cover military-style Kevlar helmets. Two plastic bags were inside the helmet cover, containing a package of crack cocaine approximately weighing 632.9 grams (the "larger amount of crack cocaine"). The surveillance officer later identified this camouflage-colored helmet cover as the same item that he saw Movant remove from the car earlier. Id.

The police found six other men seated at a table in the nearby dining room area, along with drug paraphernalia that included glassine bags used in the drug trade and marijuana cigars. The police also found more glassine baggies and a digital scale in the kitchen. Id.

While searching the apartment, the police came across a locked bathroom door. An officer unlocked the door and found Movant inside, taking a shower. Movant's black sweatpant's were on the floor, and upon searching the pockets, the police found some additional cash, a wallet containing Movant's identification

2

and a clear plastic bag containing approximately 76.1 grams of crack cocaine ("smaller amount of crack cocaine"). Id.

On May 14, 2002, a Federal Grand Jury returned an Indictment charging Movant with one count of possession with intent to distribute more than 50 grams of a substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A)(iii). (D.I. 1.) Movant initially retained Joseph Benson, Esquire and Andrew Ahern, Esquire, to represent him in this matter. (D.I. 3.) However, on April 15, 2003, Movant notified the Court that he had retained Clayton A. Sweeney, Esquire, to represent him and moved that Sweeney's appearance be substituted for that of his prior attorneys. (D.I. 137.) The Court granted the motion.

Prior to a scheduled trial, the parties informed the Court that Movant wished to enter a plea of guilty to the charge in the Indictment, and a Change of Plea Hearing was scheduled for December 12, 2003. (D.I. 159.) However, during the guilty plea colloquy, Movant advised the Court that he no longer wished to plead guilty and instead wished to proceed to trial. (D.I. 124, Exh. A.)

A two-day jury trial ensued in May 2004, after which Movant was convicted on Count One of the Indictment. (D.I. 72.) On July 13, 2005, the Court sentenced Movant to 210 months of imprisonment, five years supervised release, and a $100 special

3

assessment. Final judgment was entered on July 29, 2005. (D.I. 103.)

Movant appealed his conviction and sentence. On December 11, 2006, the Third Circuit affirmed the Court's decision. (D.I. 109.)

Thereafter, Movant timely filed a Section 2255 motion, alleging ineffective assistance of counsel. (D.I. 114; D.I. 116.) The Government filed its initial response, requesting that the Court order defense counsel to file an affidavit and supporting documentation relating to the claims raised in the Section 2255 motion. (D.I. 122.) The Court granted the Government's motion. (D.I. 123.) The Government then filed a supplemental response along with defense counsel's affidavit and documentation. (D.I. 124.) Movant filed a Reply. (D.I. 128.) The Motion is ripe for the Court's review.

## II. EVIDENTIARY HEARING

Section 2255 requires a district court to hold an evidentiary hearing on a Section 2255 motion unless the "motion and the files and records of the case conclusively show" that the petitioner is not entitled to relief. 28 U.S.C. § 2255; see also United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005); United States v. McCoy, 410 F.3d 124, 131 (3d Cir. 2005); Rule 8(a), 28 U.S.C. foll. § 2255. After reviewing the record and filings in this case, the Court concludes that the record

4

definitively establishes that Movant is not entitled to relief. Therefore, the Court concludes that an evidentiary hearing is not required.

## III. DISCUSSION

By his 2255 Motion, Movant asserts three ineffective assistance of counsel claims: (1) defense counsel failed to inform him of the terms of an additional plea offer from the Government, namely, that Movant could enter into an "open plea" of guilt without agreeing to any stipulations within the plea agreement; (2) defense counsel failed to investigate and challenge, through a retained expert, whether the drugs introduced as evidence during the trial were the same drugs that were recovered from the scene of Movant's arrest; and (3) defense counsel failed to inform Movant during the pre-trial discussions regarding Movant's option to plead guilty or proceed to trial, "whether the firearm [located in the coat found in the stack of items on the loveseat] would be used against him for enhancement purposes" at sentencing." (D.I. 115.)

Movant has properly raised his ineffective assistance of counsel claims in a Section 2255 motion rather than on direct appeal. See United States v. Garth, 188 F.3d 99, 107 n.11 (3d Cir. 1999); United States v. Cocivera, 104 F.3d 566, 570 (3d Cir. 1996); see also United States v. Swint, 2000 WL 987861, at *5 (E.D. Pa. July 17, 2000). To prevail on his ineffective

5

assistance of counsel claims, Movant must satisfy the two-part
test articulated by the United States Supreme Court in Strickland
v. Washington, 466 U.S. 668, 687-88 (1984).  Under Strickland's
first prong, Movant must demonstrate that counsel's performance
fell below an objective standard of reasonableness, with
reasonableness being judged under professional norms prevailing
at the time counsel rendered assistance.  Id. at 688.  Under the
second prong of the Strickland test, Movant must affirmatively
show that counsel's deficient performance prejudiced his case.
Strickland, 466 U.S. at 692-93.  In other words, Movant must show
that "there is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have
been different."  Id. at 694.  When applying the Strickland test,
the Court "must indulge a strong presumption that counsel's
conduct falls within the wide range of reasonable professional
assistance."  Id. at 689.

## A.    Whether Counsel Was Constitutionally Ineffective For Failing To Discuss An "Open Plea" Option With Movant

In Claim One, Movant contends that defense counsel failed to
inform him of an additional plea offer made by the Government,
namely, that Movant could enter into an "open plea" of guilt
without agreeing to any particular plea agreement stipulations.
Movant asserts that he would have entered an "open plea"
agreement because he would have received a three level sentence
reduction for acceptance of responsibility, an option that was

6

not available to him once he proceeded to trial. Movant contends that counsel's failure to inform him of this "open plea" option resulted in the imposition of an additional 59 months of imprisonment.

Counsel has responded by affidavit that the Government did not offer Movant an additional option to plead guilty without stipulating to the conditions in the plea agreement. (D.I. 124, Exh. A.) Moreover, Movant does not provide, and the record does not contain, any support for his contention that the Government ever presented the option of an "open plea." Therefore, the Court concludes that counsel did not render ineffective assistance in the manner alleged by Movant, because Movant's assertion that the Government explicitly proffered such a plea offer is factually baseless.

Additionally, to the extent Movant asserts a claim that defense counsel failed to inform him of a defendant's general ability to enter an "open plea," the Court concludes that Movant's claim does not warrant relief because Movant has failed to demonstrate prejudice as required by Strickland. Movant has not provided any facts, such as any admissions of complicity in the crime, to support his assertion that entering an "open plea" would have resulted in a lesser sentence for acceptance of responsibility. See, e.g., United States v. Gonzalez-Rivera, 217 Fed. Appx. 16 (3d Cir. Feb. 15, 2007). Thus, the Court concludes

7

that the prejudice Movant allegedly suffered from counsel's failure to advise him of the "open plea" option is too speculative to satisfy <u>Strickland</u>. <u>Id.</u>

Moreover, Movant has not demonstrated a reasonable probability that he would have entered into an "open plea" had counsel informed him of the option. The record demonstrates that counsel engaged in lengthy and thorough discussions with Movant regarding his option of pleading guilty or proceeding to trial. <u>See</u> (D.I. 124, Exh. A, at ¶¶ 3-5.) During these discussions, defense counsel explained to Movant that the one major benefit derived from pleading guilty would be that Movant could request a reduction in his sentencing offense level due to his acceptance of responsibility. Defense counsel attempted to negotiate a "cooperation" plea agreement whereby Movant would cooperate with the Government regarding the drug transaction for which he had been indicted or for other drug transactions. The Government was not interested in this type of "cooperation agreement," and rejected counsel's attempts. Defense counsel did, however, successfully negotiate a plea agreement preserving Movant's right to appeal the denial of his motion to suppress evidence seized in the search, as well as his constitutional challenges to 21 U.S.C. § 841. Yet, during the plea colloquy, Movant rejected the opportunity to enter the plea agreement, saying he "could not do it," he could not plead guilty.

According to counsel, Movant never expressed any interest in pleading guilty after the aborted plea colloquy, and nothing in the record indicates that Movant changed his mind about his refusal to plead guilty. Significantly, Movant does not assert, and the record does not indicate, that Movant aborted the actual plea agreement offered by the Government for a particular reason, such as a fear of potential danger to his family as a result of the agreement; rather, the record suggests that Movant simply decided to proceed to trial. Viewing Movant's demonstrated unwillingness to enter the plea agreement obtained by counsel, which was arguably more favorable than an "open plea" would have been, in conjunction with Movant's unsupported assertions in this proceeding, the Court concludes that Movant has failed to demonstrate a reasonable probability that he would have entered an "open plea" of guilt, even if one had been offered. See c.f. United States v. Booth, 432 F.3d 542, 548-49 (3d Cir. 2005) (where movant had indicated a willingness to plead guilty so long as he was not required to cooperate against others involved in the crime, an evidentiary hearing was needed to determine if counsel's failure to inform movant of the open plea option constituted ineffective assistance). Accordingly, the Court concludes that Movant has not demonstrated ineffective assistance of counsel based on counsel's failure to secure or advise Movant of the "open guilty plea" option.

**B.    Whether Defense Counsel Was Constitutionally
       Ineffective For Failing To Question The Drug Evidence**

In February 2002, two weeks after Movant's arrest, the FBI

weighed the drug evidence retrieved from the camouflage colored

helmet cover (the larger amount of crack cocaine) and the pocket

of Movant's sweatpants (the smaller amount of crack cocaine).

Pursuant to the policies of the Drug Enforcement Agency ("DEA"),

the FBI weighed the drugs with the packaging that held them in

order to determine gross grams.   The FBI determined that the

crack cocaine in the helmet cover weighed 632.9 gross grams, and

the crack cocaine from the sweatpants weighed 76.1 gross grams.

The DEA report described the substance as "off-white chunky

cocaine base cocaine."   (D.I. 115, at p. 11.)

A few months later, in July 2002, the Medical Examiner's

Office determined the net weight of the drugs - without the

packaging - and found the large amount of crack cocaine weighed

607.28 net grams and the smaller amount of crack cocaine weighed

67.27 net grams.   This first report by the Medical Examiner's

Office described the evidence as a "tan chunky substance cocaine

base (crack) with no presence of sodium bicarbonate."   Id.

Nearly a year later, just prior to trial in May 2003, the Medical

Examiner's Office weighed the drugs again, this time finding that

the larger amount of crack cocaine weighed 544.23 net grams and

the smaller amount weighed 60.66 net grams.   In this report, the

evidence was described as a "yellow chunky substance with a

mixture of cocaine salt and cocaine base, without the presence of sodium bicarbonate." Id. at pp. 11-12.

In his second claim for relief, Movant contends that defense counsel unreasonably failed to investigate and challenge whether the drugs introduced at trial were in fact the same drugs recovered from the scene of his arrest. Movant also contends that counsel was ineffective for failing to hire an expert witness to testify as to this "different drug evidence" theory at trial. According to Movant, the fact that the three reports contained discrepancies regarding the appearance, chemical mixture, and weight of the drugs indicated that the drugs introduced at trial were not the same drugs taken from the scene of his arrest.

Counsel's affidavit acknowledges that Movant repeatedly discussed the "different drug" theory with him. (D.I. 124, Exh. A.) Unlike Movant, however, counsel did not view these differences as indicative of an identity, reliability, or chain of custody problem. Rather, focusing on the different weights contained in the reports, counsel believed that the difference in weight between the FBI's evaluation and the Medical Examiner's first evaluation was due to different testing methods used by the FBI and the Medical Examiner. Specifically, the Medical Examiner's Office did not include the weight of the drugs' packaging, whereas the FBI did include the weight of the

11

packaging. In turn, counsel attributed the decrease in weight between the first and second evaluations performed by the Medical Examiner's Office to the percentage of drugs that had to be consumed in the testing process itself.                Nevertheless, as indicated in his affidavit, counsel heeded Movant's concerns and decided to attempt to exploit any issues regarding the chain of custody with respect to the drugs that may arise at trial. Id. Such an opportunity never arose, however, because the Government demonstrated a consistent, unbroken chain of custody. Consequently, counsel focused his argument on other issues relating to guilt or innocence rather than on non-existent chain of custody issues. Id. Indeed, the trial transcript reveals that defense counsel repeatedly challenged the proof regarding Movant's possession of the drugs. (D.I. 80; D.I. 82.)

     As previously noted, a trial counsel's strategic choices are reviewed with a strong presumption of correctness. Relying on counsel's explanation regarding the strength of the chain of custody evidence, as well as on the Third Circuit's determination in Movant's direct appeal that the Government established the drugs to be "crack" cocaine,[1] the Court cannot conclude that defense counsel's decision not to raise a chain of custody issue during trial fell outside the wide range of professionally

---

[1]     United States v. Cubbage, 208 Fed. Appx. 92, 97 (3d Cir. Dec. 11, 2006).

competent assistance.  See, e.g., United States v. Kennedy, 2009
WL 4573950, at *4 (3d Cir. Dec. 7, 2009)("Counsel's decision not
to challenge the evidence in the Cadillac based on a chain of
custody argument is not a deficient performance as a matter of
law.").

    Moreover, even if the Court were to assume, arguendo, that
defense counsel should have raised at trial the issue of the
discrepancies in the three reports, the Court cannot conclude
that the omission was prejudicial under Strickland.  As an
initial matter, the Court notes that chain of custody issues
normally go to the weight of the evidence, not to its
admissibility.  See Melendez-Diaz v. Massachusetts, 129 S. Ct.
2527, 2532 n.1 (2009).  Thus, to demonstrate prejudice under
Strickland, Movant has to show a likelihood that he would have
prevailed on a motion to exclude the drug evidence, and having
prevailed on such a motion, a reasonable probability that he
would not have been convicted.  Kennedy, 2009 WL 4573950, at *5.

    The Court concludes that Movant cannot satisfy this burden.
First, contrary to Movant's implicit suggestion, the Government
was not required to establish the presence of sodium bicarbonate
in order to prove that the drugs were crack cocaine.  See
generally United States v. Coley, 2004 WL 253474, *4 (D. Del.
Feb. 9, 2004).  Second, the Third Circuit held, on Movant's
direct appeal, that the Government met its burden of establishing

that the cocaine base possessed by Movant was "crack" cocaine

through the testimony of four experienced drug detectives and one

chemist during Movant's trial. United States v. Cubbage, 208

Fed. Appx. 92, 97 (3d Cir. Dec. 11, 2006). Therefore, the Court

concludes that Movant cannot demonstrate a reasonable probability

that he would not have been convicted but for counsel's failure

to question the aforementioned discrepancies in the reports

regarding the drug evidence.[2] Accordingly, the Court concludes

that Movant has not demonstrated ineffective assistance of

counsel based on counsel's failure to challenge the drug

evidence.

## C. Whether Counsel Was Constitutionally Ineffective For Failing To Predict That Firearm Possession Would Not Result In A Sentencing Enhancement

In his final claim, Movant contends that counsel was

constitutionally ineffective for failing to accurately predict

whether the firearm found in the coat would be used against him

for enhancement purposes at sentencing. Movant suggests that,

---

[2]      Moreover, it is unlikely that the weight discrepancy
would have been dispositive to the jury, because the discrepancy
in the weights of the drugs did not affect the determination that
Movant possessed more than 50 grams of a substance containing a
detectable amount of cocaine base. For instance, the lowest
weight attributed to the total amount of drugs in Movant's
possession (both smaller and larger amounts combined) was 600
grams, well above the 50 gram threshold weight for establishing a
violation of § 841(a)(1) and (b)(1)(A)(iii). Similarly, the
lowest weight attributed to the smaller amount of cocaine found
in Movant's sweatpants was 60 grams, which is still above the 50
gram threshold weight.

14

had he known the firearm would not be used to enhance his
sentence, he might have pled guilty prior to trial in order to
receive a lesser sentence.

During their search of the premises, the police seized a
firearm from a coat found in a stack of items on the loveseat.
Although there were other men sitting near the loveseat, the coat
and gun were located near other items belonging to Movant,
including Movant's car title and the larger amount of crack
cocaine attributed to Movant.  Given these circumstances, counsel
informed Movant that it was not clear whether his sentence would
be enhanced on the basis of any firearm possession.  (D.I. 124,
Exh. A.)  Moreover, referring to the plea agreement offered by
the Government, counsel explained to Movant that the Government
had not insisted upon the gun being attributed to Movant as a
condition to giving its consent that Movant could preserve
appellate issues.  Counsel also pointed out that the Government
did not include in the plea agreement a stipulation regarding the
Government's right to seek such an enhancement.  Given counsel's
thorough assessment, Movant knew that his final sentence could
vary anywhere up to the statutory maximum.  In these
circumstances, the Court concludes that counsel's advice to
Movant was objectively reasonable.[3]

_____

[3]     In his Reply, Movant contends that counsel never
informed him that the Court would independently decide whether to
apply the firearm enhancement based on the proceedings and the

In addition, the Court also concludes that Movant has failed to demonstrate prejudice under Strickland stemming from counsel's failure to definitively predict that the Government would not pursue a sentencing enhancement for Movant's possession of a firearm.  As previously explained, Movant had the ability to plead guilty to the offense charged in the Indictment with the benefit of a plea agreement that did not require Movant to take responsibility for the firearm.  However, Movant decided against entering a guilty plea and proceeded to trial.  Movant's actions demonstrate to the Court that Movant would not have accepted a plea agreement regardless of any assurances from counsel as to whether or not the firearm enhancement would be applied at sentencing.  Accordingly, the Court concludes that Movant has not demonstrated ineffective assistance of counsel based on counsel's failure to accurately predict whether the Court would enhance his sentence based upon firearm possession.

## IV.  CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a Section 2255 motion, the court must also decide whether to issue a certificate of appealability.  See 3d Cir. L.A.R. 22.2 (2008).  A certificate of appealability is appropriate when a movant makes a

---

pre-sentence report.  (D.I. 128.)  Interestingly, this assertion demonstrates the speciousness of Movant's third claim, because Movant implicitly recognizes counsel's inability to definitively determine if the Court would enhance Movant's sentence on the basis of the firearm.

16

"substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Section 2255 Motion does not warrant relief under 28 U.S.C. § 2255. In the Court's view, reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court declines to issue a certificate of appealability.

## V.   CONCLUSION

For the reasons stated, the Court will deny Movant's 28 U.S.C. § 2255 Motion To Vacate, Set Aside, Or Correct Sentence without an evidentiary hearing, and will not issue a certificate of appealability.

An appropriate Order will be entered.